**BOOTH–AMERICAN SHIPPING CO. v. IMPORTERS' & EXPORTERS' INS. CO. et al.**

(Circuit Court of Appeals, Second Circuit. June 17, 1925.)

No. 342.

1. **Insurance ⊚⟳115(8)—Charterer of vessel for gross hire irrevocably paid in advance had insurable interest in vessel.**

Charterer of vessel for gross hire irrevocably paid in advance, whether vessel was lost or not, who had collected freight in advance, which was also paid irrevocably, *held* to have insurable interest in vessel, supporting policy covering "disbursements and/or profits on freight" in case of total and/or constructive total loss.

2. **Insurance ⊚⟳159—Certificate of marine insurance held to cover charterer's interest in vessel.**

Certificate of insurance issued to charterer, covering "disbursements and/or profits on freight," without knowledge of charterer's relation to vessel or freights, *held* to cover whatever interest at risk charterer had, which was right to direct vessel's movements.

3. **Insurance ⊚⟳475—Policy held to conclude marine insurers as to liquidation of damages.**

In absence of fraud in valuation, words, "policy proof of interest" and "full interest admitted," in marine insurance policy, concluded insurers as respects liquidation of damages, where valuation not fraudulent.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in personam by the Booth-American Shipping Company against the Importers' & Exporters' Insurance Company and another. From a decree dismissing its libel, libelant appeals. Reversed; libelant to recover as prayed.

Appeal from a decree in the admiralty dismissing a libel in personam on an insurance certificate. The libelant had chartered the schooner Sephie for a voyage from Para to Oporto or Lisbon and return, for a gross hire of $25,000, payable in advance "earned and irrevocably retained by the owners, vessel and/or cargo lost or not lost." It paid

the hire, and loaded the schooner at Para for Oporto, collecting its freight in advance, which was also paid irrevocably, whether or not the vessel was lost. Through a broker it procured from the respondents a certificate of insurance for $6,250, the material parts of which were as follows: "On the 2d day of December, the above companies • • • insured Booth & Co., Inc., in the sum of $6,-250, cn disbursements and/or profits on freight, valued at $12,500 per schooner Sephie, expected sailed on or about 11/26/18, at and from Para to Oporto and/or Lisbon, direct or otherwise." At the bottom of the certificate appeared the words: "Against total and/or constructive total loss. Policy proof of interest. Full interest admitted."

On the voyage out the schooner met severe weather and was obliged to put into Lisbon in distress, where she was declared a constructive total loss, and in consequence was unable to complete her voyage to Oporto or her return to Para. Whereupon the libelant, conceiving that the insurance had fallen due, brought suit. The respondents argued that the certificate did not cover the loss, there being no "profits on freight" at risk, all freights having been paid irrevocably, and no "disbursements," the payment of the hire for the round trip not being at risk on the voyage out. The learned trial judge held that the insured had proved no loss in respect of the outbound voyage, and dismissed the libel.

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and Frank A. Bull, both of New York City, of counsel), for appellant.

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for appellees.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] Two separate questions arise: (1) Whether the libelant had an insurable interest at all; (2) whether the certificate covered it. As to the first we cannot see how there can be any doubt. The charter party gave the libelant an existing interest in the return voyage of the Sephie, that is, the power to compel her to lift and carry a cargo from Lisbon or Oporto to Para. That interest was dependent upon her continued existence; it was at risk with her hull, because, that gone, the owner was under no duty to substitute another vessel. It makes no difference that the charter par-

ty was not a demise, or the charterer not a bailee. It is irrelevant that no property interest, not even possession, had been created in the vessel as a chattel. It is enough that there was some interest which the law will recognize, which inhered in that particular ship. It seems unnecessary to labor the point, which, indeed, we do not understand that the respondents dispute.

[2] The difficult question is whether the certificate covered the risk. The respondents wrote the policy without any knowledge of the libelant's relation to the vessel or her freights, except in so far as arose from the phrase, "profits on freight," which was as consistent with ownership as with the rights of a charterer. Further, the respondents' broker swore that, if he had known that the risk to be covered extended so far, he would have charged a larger premium and would have expressed his intent otherwise. On the other hand, the libelant must have meant to cover the loss now sued on, since it had no other, for in no aspect could the phrase "profits on freight" on the outward voyage cover any risk. The testimony of certain insurance brokers threw no sufficient light on the phrases to be of assistance.

We must give to these elliptical expressions such a meaning as will best accord with the presumed purpose of the insured, so far as it was conveyed to the insurer. "Disbursements" cannot, in any event, be read literally; if so, the policy would be a gaming contract. It can therefore mean only some interest at risk which the assured acquired by the payments. This was indeed the meaning given it in Currie et al. v. Bombay Insurance Co., L. R. 3 C. P. 72, 83, 84, and that assumed by Matthew, J., in Lawther v. Black, 6 Com. Cas. 5, the case on which the appellees especially rely. We think it covers whatever was so acquired; that is, whether the assured was a charterer or an owner. If an owner, then the disbursements will usually outfit the ship, or help to clear her for her voyage; if they make her a more efficient carrier, the owner must intend to cover that added value. If a charterer, hire will secure his right to dictate her movements; the meaning can scarcely be limited to exclude such a power. Therefore, when underwriters insure "disbursements," without knowing the assured's relation to the ship, they must be held to assume the risk, whichever position the assured holds, and should inquire, if they think the hazards different.

We regard the case as one of first impression, and the cases of Sun, etc., Co. v.

Ocean Insurance Co., 107 U. S. 485, 1 S. Ct. 582, 27 L. Ed. 337, and Lawther v. Black, 6 Com. Cas. 5, 196, as not in point. In the second case the plaintiff was owner and had chartered the ship for a voyage to West Africa, whence he hoped to work her home at a profit. To outfit and clear her on the out-bound voyage he was put to various disbursements, which he insured along with the hull and chartered freight. On the outward voyage she took fire and had to make port, so badly damaged that the voyage was abandoned. In a suit on the policy covering disbursements, it was held that it covered only in the event of total loss which had not occurred. The plaintiff argued that the return voyage was completely broken up, and there had been a total loss as to disbursements. But the court said no; that the disbursements "came back" in outfit and "enhanced efficiency," and that, as the ship was not a total loss, the policy did not cover. Further, that they could not be read as covering profits on the return voyage. In the last respect, the only one here relevant, we altogether agree. We hold the underwriters here, not for freights lost in futuro, but for the loss of the present value of the assured's interest in the ship, which we have already described.

Sun Mutual Insurance Co. v. Ocean Insurance Co., supra, does not seem to us to apply either. The plaintiff, an insurance company, had insured a master on his primage and interest in a charter, Chincas to Hamburg. The ship was bound on an earlier charter, New York to San Francisco, the second charter to be fulfilled thereafter. In reinsuring the risk with the defendant, the plaintiff had described it "$6,550 on charter, $2,650 on primage and $1,500 on property on board ship Chas. S. Pennell at and from New York to San Francisco." In the Atlantic, and while fulfilling the first charter, the ship was lost, and the master recovered from the plaintiff for his loss on the second charter and its primage; the figures representing his interest in that venture. The court merely held that the plaintiff failed to prove that the loss reinsured was identical with that paid; that is to say, a policy upon a master's primage and interest in a charter from New York to San Francisco did not cover similar interests in a subsequent charter. The master had interests in the first charter, and that alone could be covered by the reinsurance. He had not recovered from the plaintiff for these. We fail to see how this can be relevant here, when the only possible meaning of the pol-

icy, given the facts, was to cover the charterer's existing interest in the ship. .

We agree that the appellant's cases are not in point either. When the policy describes the risk expressly, or "until laden" at the return port, there can, of course, be no question. The language at bar was not as clear as might be, but in such documents we are familiar with that. In our judgment it is enough that it was apt to cover an existing interest of the kind, in fact vested in the assured. Nor is it a fair objection that this in effect makes the policy equivalent to an insurance upon "profits on freight" on the return voyage. These would not correspond at all with the hire; they might be more or less. The hire was indeed made the measure of that interest, as it probably was; but the prospective freights are quite different. We agree that they were not covered; they need not have been. We uphold the suit, just as we should one upon a policy on a term for years, on which the rent had been paid in advance.

[3] We have therefore no need to consider the clauses, "Policy proof of interest," or "Full interest admitted," beyond saying that, as it is not suggested that the valuation was fraudulent, they conclude the respondents in respect of the liquidation of damages.

Decree reversed; libelant to recover as prayed.