## FLINT et al. v. ROBINS DRY DOCK & REPAIR CO.

(Circuit Court of Appeals, Second Circuit. June 7, 1926.)

No. 272.

1. Shipping ⬅️54—Repairer employed by owner of vessel held not liable in contract to time charterers for negligence, causing loss of use of vessel, nor could time charterers sue as third parties for whose benefit contract was made.

Time charterers of vessel, losing use of it through negligence of repairer employed by owner, held not entitled to recover of repairer in contract, nor entitled to sue as third parties for whose benefit contract was made.

2. Admiralty ⬅️4.

Libel by time charterers to recover of repairer employed by owner for loss of use of vessel, due to negligence of repairer while vessel was in dry dock, held within admiralty jurisdiction.

3. Shipping ⬅️54—Repairer of vessel held liable in tort to time charterers for loss of use of vessel resulting from its negligence.

Repairer of vessel employed by owner held liable in tort to time charterers for loss of use of vessel, due to its negligence in letting spare propeller fall while installing it, after vessel had been properly withdrawn from service by owner for repairs.

4. Shipping ⬅️58(3).

Measure of damages accruing to owner and charterers of vessel for repairer's negligence, causing loss of use, is the market value of the use for the period of delay.

5. Release ⬅️27—Release given repairer by master, settling owner's claim, held not defense to charterers' claim for loss of use of vessel.

Release given repairer by master, on settlement of owner's claim, without intent of either thereby to release charterers' known claim, held not defense to charterers' claim for loss of use of vessel due to repairer's negligence.

6. Shipping ⬅️54.

Repairer's negligence in letting spare propeller fall while installing it, causing 14-day loss of use of vessel, held proximate cause of loss of use by time charterer.

7. Damages ⬅️18.

Ordinarily damage suffered by one whose interest in party or thing injured is contractual is too remote for recovery, unless wrong was done with intent to affect contractual relation.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by George Flint and others against the Robins Dry Dock & Repair Company. From a decree for libelants, respondent appeals. Affirmed.

Barry, Wainwright, Thacher & Symmers, of New York City (James K. Symmers, of New York City, of counsel), for appellant.

H. Alan Dawson, of Philadelphia, Pa., and Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for appellees.

Before ROGERS, HAND, and MACK, Circuit Judges.

MACK, Circuit Judge. This proceeding arose out of the same accident on which the libel in rem considered in The Bjornefjord (C. C. A.) 271 F. 682, was based. We there held that the time charterer had no cause of action in rem for the estimated value of the use of the vessel for 14 days, due to the negligence of the instant respondent in letting the spare propeller fall while installing it in the ship. The basis of that decision was that instant respondent was an independent contractor properly selected by the owner; that under the charter party the steamer was properly withdrawn for repairs, and the only obligation of the owner was to return her as soon as she should have been put into an efficient state to resume service, payment of hire ceasing during the interval.

After that decision the present libel was filed to recover these same damages from respondent. Negligence and the resulting 14 days' delay are conceded; liability is, however, denied—in contract, because respondent was a stranger to the charter party, and libelants strangers to the contract for repairs; in tort, because the steamship was at no time in the possession of or being used by libelants during the two weeks' delay. Respondent further alleges that the master of the steamship made claim against it for $3,271.21, "the amount of the alleged damages accruing to said master's principals by reason of the delay of said steamship," entailed by defendant's negligence, which sum respondent paid December 7, 1917, at which date the master executed a general release, "by which release said steamship, her owners, etc., and said master discharged respondent from all actions, damages, claims, and demands whatsoever, and especially of and from all claims and demands arising out of towage and/or detention of said steamship in any way due to the breaking of said spare propeller on said vessel on or about July 31, 1917." Respondent further alleges that at the time of payment it had "no knowledge nor any information as to the exact ownership of said steamship Bjornefjord, or as to her relations by charter party or otherwise to the libelants in this case, and in making said payment to said master and in taking the release executed by said master this respondent procured said master to execute said release, as above stated, in full settlement of all the claims of said master, as master or otherwise, and all claims of the owners, etc., of said steamship Bjornefjord, to wit, all parties having any property interest in said steamship."

It appears from the evidence that the damages claimed, $33,068.98, represented the difference between the market value of the steamer for the 14-day loss of use, and $2,517.76, or thereabouts, the charter hire for that period; further, that on or about August 10, 1917, nearly 4 months prior to the execution of the release by the master, respondent was notified by appellants of their claim as "time-chartered owners" at the rate of approximately $75,000 per month for the period of detention. In the notification libelants stated: "We must accordingly advise you that we shall hold you liable and responsible for our damages either direct to us or through the owners. We will submit a statement of the damages and claims so soon as the amount is definitely known."

At the trial it was agreed that the master, if called, would testify that he was acting for the owners and made a settlement of their claim with respondent, and that in making such settlement he did not put forward the claim of the time charterers, and did not pretend to be settling that claim.

The matter is now before us on an appeal from a decree in favor of libelants for the principal sum of $32,550.57, with interest thereon from August 1, 1917, and costs.

[1] 1. There is clearly no direct liability in contract. Libelants were not parties to the repair contract, and inasmuch as they were not, and were not intended to be, the sole beneficiaries thereof, or, indeed, in any respect beneficiaries, they did not become privies thereto or entitled to sue for breach thereof, even under the most liberal rules that permit third parties to sue on a contract made for their benefit.

Neither Pennsylvania Cement Co v. Bradley Contracting Co. (C. C. A.) 7 F.(2d) 823, nor Town of Readsboro v. Hoosac Tunnel & W. R. Co. (C. C. A.) 6 F.(2d) 733, is in point. In the Cement Company Case the agreement between the city and the contractor expressly provided that the latter should

be solely responsible for all physical injuries to persons or property on account of the performance of the work; in the Readsboro Case the defendant, while originally no party to the contract sued upon, expressly assumed the obligations of its predecessor in title.

[2] 2. As to a liability in tort, we are met at the threshold with an objection to the jurisdiction of a court of admiralty, based on the contention that the tort, if any, having been committed while the ship was in dry dock, was not "committed and effective on navigable waters." Gonsalves v. Morse Drydock & Repair Co., 266 U. S. 171, 172, 45 S. Ct. 39, 69 L. Ed. 228. We feel ourselves, however, concluded as to this contention by The Jefferson, 215 U. S. 130, 30 S. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907, and The Robert W. Parsons, 191 U. S. 17, 24 S. Ct. 8, 48 L. Ed. 73.

[3] 3. Judge Mayer, sitting in the District Court, held in The Aquitania, 270 F. 239, that a time charterer could recover his damages for the loss of use of a vessel during the period of its repair in a libel in rem against the ship which had negligently collided with and damaged the chartered vessel, and this though the owner of the injured vessel likewise had a libel pending in the same court to recover his damages, consisting of repair expense and loss of use during the period of repairs.

In Hines, Agent, v. Sangstad S. S. Co. et al. (C. C. A. 1) 266 F. 502, under a joint libel filed by the owner and the time charterer of the vessel damaged by collision, the time charterer, while not entitled to claim that the vessel was off hire during the repair time, recovered from the damaging vessel the amount of charter hire that it paid to the owner for the period of delay.

In The S. S. Binghampton Case, decided by Judge Mayer and discussed by him in his opinion in The Aquitania, the time charterer recovered the difference between the market value of the use of the damaged vessel for the period of the delay, less the very much smaller charter hire for the same period. And in The Beaver, 219 F. 139, 135 C. C. A. 37, a similar right of recovery in the time charterer was assumed.

Without adopting Judge Mayer's language that "the ship, * * * in so far as its capacity to earn freight is concerned, * * * is the charterer's," but, on the contrary, adhering to the views expressed by us in Booth-American Shipping Co. v. Importers' & Exporters' Insurance Co. (C. C. A.) 9 F.(2d) 304, that "no property interest, not even possession, had been created in the ves-

sel as an agent" of the time charterer, we concur in the result reached in The Aquitania; and the cases cited therein. That the damaged ship in those cases was in the active service of the charterer, while in the instant case it was off hire at the time of the injury, furnishes no basis for distinguishing the cases. The charter period had not expired; she was properly off hire; she would have been in active service again, but for the injury; even active service gave the time charterer no property right in or possession of the vessel.

The difference in the facts furnishes no test of respondent's liability or of the measure of damages, even though it may result in a different apportionment of damages; if the vessel be temporarily off hire, the total damage would be divisible, the owner receiving an amount equivalent to the lost charter hire, the charterer the difference between the market value of the use and the charter hire; if not off hire, the entire damages for the delay would go to the charterer; the measure of damages, however, in both cases would be the market value of the use of the vessel for the period of the delay.

[4] Clearly, the result reached involves no injustice to respondent. Its liability for its tortious act is for the actual damage done to the combined interests in the ship. The measure of the total recovery is the market value of the loss of the use. If there had been no charter, the entire loss would have been sustained by the owner; therefore he could have recovered that amount for himself. The wrongdoer has no interest in and should not benefit because of the contractual obligations of the shipowner to the charterer, or the absence of any liability of the owner to the charterer for respondent's negligence. This nonliability of the owner is neither a test nor a measure of the wrongdoer's liability, for, though the owner be not directly liable to the charterer, he may nevertheless be liable over to him as a trustee for so much of the recovery from the wrongdoer as exceeds his own personal loss. In The Winkfield, [1902] Probate, 42, despite the fact that the Postmaster General, because of his official immunity, was free from liability to the owners of mail matter destroyed by the negligence of a ship that collided with the vessel on which it was being carried, the Court of Appeal held that he was nevertheless entitled to the full value of the material destroyed. And in Rodocanachi v. Milburn, 18 Q. B. Div. 67, the owner of goods lost through negligence was held entitled to recover the full market value from the wrongdoer, although he was bound

under a contract to sell them below that value, if they had arrived safely at the port of destination. See, too, 39 Harv. Law Rev. p. 760.

In the very interesting opinion of Collins, M. R., in 'The Winkfield, supra, the history of the relative rights of bailor and bailee against wrongdoers is pointed out. Originally only the bailee could sue; in the later development either bailor or bailee could bring the action. If the bailee sued, he would recover the entire value of the property. But, though he be not directly liable to his bailor for the negligence of the third person, he, like the Postmaster General in The Winkfield, held the excess of recovery over his own personal loss in trust for the bailor or owner of the mail matter respectively.

[5] It is unnecessary to determine in the instant case whether the charterer's right to recover for his loss is direct against the wrongdoer, enforceable by a libel independent of that which the shipowner, but for the release, could have brought for his damages, or whether it is indirect, based upon the equitable obligation of the shipowner to the charterer, in analogy to the bailment and the Winkfield cases; for no error is assigned because of the failure to join the shipowner as libelant pursuant to the practice adopted in the Sangstad Case, supra. Even if the right be derivative and equitable in its nature, the settlement made and the release accepted, as it was in this case, with full knowledge of libelants' claim, could afford no defense in admiralty, the more so when, as here, neither party intended it to operate as a release of more than the owner's own personal damages.

[6, 7] It is urged, however, that the loss suffered by libelants cannot be deemed the proximate result of respondent's negligence. It is indeed true that ordinarily the damage suffered by one whose interest in the party or thing directly injured is due to some contractual relation is deemed too remote to permit recovery against the wrongdoer, unless the wrongful act be done with intent to affect the contractual relation. Typical cases are Conn. M. L. Ins. Co. v. N. Y. & N. H. R. R. Co., 25 Conn. 265, 65 Am. Dec. 571, in which a life insurance company was denied recovery against one who had killed the insured, and Taylor v. Neri, 1 Esp. N. P. 386, in which a theater manager was held not entitled to recover against one who, by assaulting an actor, had disabled him from fulfilling his engagement with the plaintiff. See, too, Brink v. Wabash Ry. Co., 160 Mo. 87, 60 S. W. 1058, 53 L. R. A. 811, 83 Am. St. Rep. 459; Dale

v. Grant, 34 N. J. Law, 142; Simpson v. Thompson, L. R. 3 A. C. 279. In Remorquage v. Bennetta, [1911] 1 K. B. 243, recovery was denied the owners of a steam tug for the loss of remuneration that they would have earned if the completion of a towage contract then in course of performance had not been prevented by respondent's negligent collision with and sinking of the ship that was being towed. In all of these cases the damage to plaintiff or libelant was deemed too remote.

The conceptions of remote result and proximate cause are, however, not fixed and permanent; in the development of legal principles and their adjustment to social needs, the boundary lines have been and will continue to be extended. In our day the damages suffered by one who eats diseased food intended by the manufacturer to be marketed as pure food are deemed to be the proximate result of the manufacturer's negligence, and therefore recoverable from the manufacturer, even though the injured person had direct relations only with an intermediate and independently contracting dealer. Ketterer v. Armour & Co., 247 F. 921, 160 C. C. A. 111, L. R. A. 1918D, 798. See, too, Johnson v. Cadillac Motor Car Co. (C. C. A.) 261 F. 878; 8 A. L. R. 1023.

Furthermore, unlike the insurance, towing, and analogous cases, recognition of libelants' right of action involves no extension of responsibility for results beyond those reasonably to be anticipated. The damages which respondent must meet are limited to reimbursement for the proximate results of its negligence. As this, however, has directly affected several parties, each is entitled to his just share of the total amount.

Through illness Judge ROGERS was prevented from participating in this decision.

Decree affirmed.