**POOL SHIPPING CO., Limited, v. UNITED STATES.**

Circuit Court of Appeals, Second Circuit. June 10, 1929.

No. 296.

Charles H. Tuttle, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Charles C. Burlingham and A. Howard Neely, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The liability of the respondent for the collision of its Coast Guard cutter Apache with the Clearpool was determined in our former decision on an appeal from the interlocutory decree in this cause. Pool Shipping Co. v. United States (C. C. A.) 18 F.(2d) 1020. On mandate a commissioner was appointed to report the damages suffered by libelant, exceptions to the report were overruled, and the report was confirmed. It is conceded by the libelant that interest should not have been allowed, in view of the recent decisions of the Supreme Court in Boston Sand & Gravel Co. v. United States, 278 U. S. 41, 49 S. Ct. 52, 73 L. Ed. ——, and United States v. Commonwealth, 278 U. S. 427, 49 S. Ct. 183, 73 L. Ed. ——.

The errors assigned on this appeal all relate to the damages allowed by the court below. The questions which remain for consideration are:

(1) Whether libelant, as bailee, is entitled to recover for damages sustained by the owners of the cargo.

(2) Whether libelant's damages should not be reduced by the contribution in general average made by the cargo to the hull.

(3) Whether the libelant's damages should not be reduced by the amount expended for wages and provisions of crew.

This suit could only be brought by authority of the special act of Congress known as Private Act No. 129, 67th Congress (42 Stat. 1714), which provided as follows:

"That the claim of the Pool Shipping Company, Limited, owner of the British steamship Clearpool, against the United States for damages alleged to have been caused by collision between the said steamship and the United States Coast Guard cutter Apache in Chesapeake Bay, on the 13th day of November, 1914, may be sued for by the said Pool Shipping Company, Limited, in the District Court of the United States for the Southern District of New York, sitting as a court of admiralty and acting under the rules governing such court, and said court shall have jurisdiction to hear and determine such suit and to enter a judgment or decree for the amount of such damages and costs, if any, as shall be found to be due against the United States in favor of the Pool Shipping Company, Limited, or against the Pool Shipping Company, Limited, in favor of the United States, upon the same principles and measures of liability as in like cases in admiralty between private parties and with the same rights of appeal. * * * *"

Respondent contends that the words, "the claim of the Pool Shipping Company, owner of the * * * Clearpool against the United States for damages caused by collision," which "may be sued for" under the act; mean only the individual claim of that company and do not include any cause of action which libelant may have as bailee of the cargo. If this is so, it may be argued that the grant was not enlarged by the succeeding provision of the act that:

"The District Court, * * * sitting as a court of admiralty and acting under the rules governing such court, * * * shall have jurisdiction to hear and determine such suit and to enter a judgment or decree for the amount of such damages and costs, if any, as shall be found to be due against the United States * * * upon the same principles and measures of liability as in like cases in admiralty between private parties. * * * *"

Yet the remedy is given in admiralty "upon the same principles * * * as in like cases in admiralty between private parties," and in admiralty an action by a carrier as bailee to recover against a tort-feasor for damage to cargo is extremely common. The Beaconsfield, 158 U. S. 303, 15 S. Ct. 860, 39 L. Ed. 993; Mercantile Bank v. Flower Lighterage Co. (C. C. A.) 10 F.(2d) 705; National Surety Co. v. United States (C. C. A.) 129 F. 70; The Winkfield, [1902] P. D. 42. While a bailee in possession had at common law a remedy in trespass even before the days when the bailor was permitted to sue (Holmes on the Common Law, p. 116 et seq.), yet a suit by a bailee has long been a matter of such frequent occurrence in admiralty as to have become a marked characteristic and an almost daily practice of that branch of the law.

In such circumstances it seems an illiberal interpretation of the act to say that the words "claim of the Pool Shipping Company," which in terms do not limit the recovery to

damages to the vessel and property of that company, are not sufficiently broad to cover the claim which a shipowner is accustomed to assert on behalf of the cargo. The case is different from one where A is simply empowered by special act to sue for damages to his property and should attempt as trustee under a will to recover damages arising from the same casualty. Here the court is given jurisdiction to enter a decree for the amount of such damages as shall be found to be due against the United States, "upon the same principles * * * as in like cases in admiralty between private parties."

In a private cause the libelant could recover the very cargo damage it here seeks. By the broad language used in defining the remedy Congress intended to place libelant in the same position that it would have occupied against a private person, and employed words adequate to effectuate this purpose. The physical damages to the cargo were allowed by the court below at the sum of $3,211.54, which, in accordance with the foregoing reasoning, may be recovered by the libelant as bailee of the cargo.

■ It is next contended that libelant's damages should be reduced by the proportionate amount of general average contributions applicable to the cargo which was reckoned by the court below at $3,200.51. It is said that, if this sum were paid by the cargo, the libelant could not sue to recover it, for the reason that all damages due to general average expenses which were occasioned by the collision would have been already satisfied. But such a payment would no more extinguish the cause of action of the shipowner against the wrongdoer than would the payment of insurance for collision damages by marine underwriters terminate the claim of the shipowner for damages. A contribution in general average by the owner of cargo, like the payment of insurance by an underwriter, results in his subrogation pro tanto to the claim of the shipowner against the wrongdoer. In other words, though the cargo paid the hull its contribution, the claim of the hull to recover general average expenses as part of its own collision damages would not be extinguished but, by equitable principles, would be kept alive and enforced for the benefit of the cargo.

While there seems to be no precise authority applicable to the present case, the insurance decisions show the correct principle involved. It has long been settled that payment of insurance affords no defense to the wrongdoer in an action for collision damages. The Propeller Monticello v. Mollison, 17 How. 152, 15 L. Ed. 68; The Potomac, 105 U. S. 630, 26 L. Ed. 1194. The cause of action survives and the insurer is subrogated. The obligation of the cargo to contribute to the sacrifice made in the common interest amounted to an involuntary insurance for the benefit of the hull. The Apache was primarily liable and the indemnifying cargo to the extent of its contributive obligation was secondarily liable. The latter was, therefore, in the position of a surety and entitled to subrogation. Any contention that this claim on behalf of the cargo is not within the terms of the special act is met by the construction of the act which we have already indicated.

If, on the other hand, the cargo has not paid its general average contribution, the libelant may recover this amount in its own right against the tort-feasor as part of the collision damages. Gray's Harbor Tugboat Co. v. Petersen (C. C. A.) 250 F. 956; Erie & Western Transportation Co. v. City of Chicago (C. C. A.) 178 F. 42; The Energia (D. C.) 61 F. 224, aff'd in (C. C. A.) 66 F. 608. It therefore is quite immaterial whether the general average contribution in question has been paid by the cargo or not. In either event the cause of action to recover it as part of the collision damages would remain intact, and the satisfaction of the decree for this item would give the respondent a good discharge. The recovery to the extent of any amount theretofore contributed by cargo would be for its account.

■ It is said finally that libelant's damages should be reduced by $859.88 expended for wages and provisions of the crew while the vessel was detained for repairs. This item was objected to before the commissioner, but allowed in his report without comment, and no specification of objection to it appears in appellant's assignment of errors. It was stipulated before the commissioner: "That detention of the Clearpool by reason of the collision was 18 days and * * *. the detention rate is her time charter value of £90 per day."

The government contends that the wages and provisions for the crew cannot be recovered because they are included in the "time charter value." But that all depends on whether "value" means net or gross value. If value means *net* value, then the item of $859.88 should be allowed, for expenses must have been deducted ex hypothesi in arriving at net. If, on the other hand, "value" means *gross* value, or what the shipowner would have received from a charterer, it should not be allowed. There is no time charter set

forth in the record, and no proof that the Clearpool was under a time or, indeed, any charter. While, under the usual time charter arrangement, the owner of the vessel pays the expenses of the crew, and the hire is accordingly a gross and not a net receipt, the assumption that such was the case here would not determine the meaning of the word "value." The meaning of "value" as used in the stipulation is obscure, particularly in view of the scanty record before us. About as much may be said for one interpretation as for the other, and we decline to review the finding of the court below, where the issue is so doubtful and the objection is raised by no proper assignment of error. Rule 10 of this court; Clark v. Deere & Mansur Co. (C. C. A.) 80 F. 534; North Chicago St. Ry. Co. v. Burnham (C. C. A.) 102 F. 669.

The decree is modified, so as to disallow interest, and otherwise affirmed.