## McCARTHY v. PALMER et al.
### No. 218.

District Court, E. D. New York.
Oct. 16, 1939.

Thomas J. O'Neill, of New York City, for plaintiff.

Edward R. Brumley, of New York City (Thomas J. Brennan, of Brooklyn, N. Y., of counsel), for defendants.

MOSCOWITZ, District Judge.

During the course of the trial of this action, the Court had occasion to rule that if the plaintiff inspected a document produced by the defendants after demand, the document became admissible on behalf of the defendants even though the plaintiff refused to place it in evidence. Since this rule is at variance with the New York rule as expressed in Carradine v. Hotchkiss, 120 N.Y. 608, 24 N.E. 1020, and Smith v. Rentz, 131 N.Y. 169, 30 N.E. 54, 15 L.R.A. 138, it is perhaps advisable to consider the background of the so-called federal rule followed by the Court.

The rule was established in a very early line of federal cases and found somewhat later expression in Edison Electric Light Co. v. United States Electric Lighting Co.,

C.C., 45 F. 55. Although the rule may be found stated only in a limited number of federal opinions, it has nevertheless become a well-established rule of evidence in the Federal Courts. It was only recently reiterated in a memorandum opinion of Judge Caffey in the Southern District of New York in Grandfield v. The New York, New Haven and Hartford Railroad Co.[1]

As to the background underlying the rule, the following is to be found in 4 Wigmore on Evidence, Section 2125: "The real motive seems to have been a desire to penalize indirectly the attempted evasion of another fundamental doctrine of the common law, namely, that a party is not entitled to know beforehand the tenor of evidence in his opponent's possession." With the present liberality of our practice with respect to depositions and discovery one may well question the soundness of a rule which finds its basis in a policy which has since become alien to our law. Nor can one find unquestionable support in Rule 43(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for the continuance of such a rule. While Rule 43(a) states that all evidence shall be admissible which was admissible under federal statute, federal equity practice or the rule of the state in which the Federal Court sits, it hardly is authority for forcing matter into evidence against the will of the person merely seeking to examine it, although it is to be admitted that viewed from the standpoint of the producer of the document who seeks to have it placed in evidence after inspection by his opponent, the liberal principle underlying Rule 43(a) is really applicable.

Whatever the case may be, however, the rule, as pointed out above has become well established in the Federal Courts. In a system of jurisprudence founded upon stare decisis it does not lie within the domain of a Court of first instance to take it upon itself to upset a rule of long standing without most pressing circumstances to demand it. This Court, therefore, finds it necessary to reaffirm the rule, while recognizing, however, the advisability of reconsideration of the fundamental basis of the rule by a higher Court.

In connection with the particular evidence in question, a further problem was brought into focus, namely, the extent to which the new Rules of Civil Procedure permit the examination by one party of affidavits and similar materials secured by the other party by independent investigation incident to the preparation of the case for trial. While the Rules of Civil Procedure were designed to permit liberal examination and discovery, they were not intended to be made the vehicle through which one litigant could make use of his opponent's preparation of his case. To use them in such a manner would penalize the diligent and place a premium on laziness. It is fair to assume that, except in the most unusual circumstances, no such result was intended.

The remaining question presented relates to the applicability, if at all, of certain provisions of the Railroad Retirement Act of 1937, 45 U.S.C.A. §§ 228a–228r, upon the amount of damages granted to plaintiff against defendants by verdict of a jury. The provisions of the Act which defendants rely upon read as follows:

"§ 228b. (a) The following-described individuals, if they shall have been employees on or after the enactment date, shall, subject to the conditions set forth in subsections (b), (c), and (d), be eligible for annuities after they shall have ceased to render compensated service to any person, whether or not an employer as defined in section 228a (a) (but with the right to engage in other employment to the extent not prohibited by subsection (d) ):

"1. Individuals who on or after the enactment date shall be sixty-five years of age or over.

"2. Individuals who on or after the enactment date shall be sixty years of age or over and (a) either have completed thirty years of service or (b) have become totally and permanently disabled for regular employment for hire, but the annuity of such individuals shall be reduced one one-hundred-and-eightieth for each calendar month that they are under age sixty-five when the annuity begins to accrue.

"3. Individuals, without regard to age, who on or after the enactment date are totally and permanently disabled for regular employment for hire and shall have completed thirty years of service.

"Such satisfactory proof of the permanent total disability and of the continuance of such disability until age sixty-five shall be made from time to time as may be prescribed by the Board. If the individual

---

[1] No opinion for publication.

fails to comply with the requirements prescribed by the Board as to proof of the disability or the continuance of the disability until age sixty-five, his right to an annuity under subdivision 2 or subdivision 3 of this subsection by reason of such disability shall, except for good cause shown to the Board, cease, but without prejudice to his rights under subdivision 1 or 2 (a) of this subsection. If, prior to attaining age sixty-five, such an individual recovers and is no longer disabled for regular employment for hire, his annuity shall cease upon the last day of the month in which he so recovers and if after such recovery the individual is granted an annuity under subdivision 1 or 2 (a) of this subsection, the amount of such annuity shall be reduced on an actuarial basis to be determined by the Board so as to compensate for the annuity previously received under this subdivision.

"(b) An annuity shall be paid only if the applicant shall have relinquished such rights as he may have to return to the service of an employer and of the person by whom he was last employed; but this requirement shall not apply to the individuals mentioned in subdivision 2 (b) and subdivision 3 of subsection (a) prior to attaining age sixty-five."

In seeking to rely upon this section, and primarily subdivision a (3) thereof, as affording a basis for reduction of the jury's verdict, the defendants have consented that this Court may dispose of the questions of fact upon the evidence as to whether plaintiff is permanently and totally disabled for regular employment for hire within the meaning of the language set forth in the said subdivision. A consideration of the legal question whether the defendants may set up this provision of the Act as a defense requiring reduction of a jury's verdict in an action of this kind is unessential if the proof falls short of the factual requisites asseverated by such provision. In this respect the most favorable evidence to the defendants may be found in the following excerpts from the testimony of Dr. Black, a medical expert:

"Q. Taking into consideration what we have assumed about how the accident happened, how he fell and was unconscious, these reflexes that you have talked about, the stiffening of the back, what you called his tendency to deviate to the right, and the results of the Romberg test, are you able to state in your opinion with reasonable certainty what happened to his brain or spinal cord? * * * A. In my opinion the man had a concussion of his brain at the time his body hit the roadway or the surface of the earth adjacent the roadway when he fell off the caboose at Danbury September 23, 1938; that the concussion of the brain was of such character and severity as to abolish the function of the brain so that consciousness was lost, and that he only regained that consciousness subsequently in part at the hospital within a short while, and complete resumption of his cerebral function some months after the accident, five or six months; that he had not only an injury to his brain but also injury to his spinal cord, and that injury is now evidenced by the practically positive Romberg he now has, the unsteadiness of his legs, the weakness in his legs, the spreading apart of his feet and the deviation of his line of locomotion to the right.

"Q. This instability, this deviation, does that indicate what has happened to the equilibrium organs? A. It indicates that there is a failure of the normal functional control through the spinal cord of some of the reflexes concerned with locomotion. In my opinion an injury at the time of the concussion also involving the cord caused this.
* * *

"Q. In your opinion with reasonable certainty, these injuries having been caused on September 23rd of last year, being in the condition as you have seen him on these two examinations, and considering the nature of the injuries not only to the vertebra but also to the brain and spinal cord, are you able to state in your opinion with reasonable certainty that this condition is permanent? A. I believe I am.

"Q. So state, please. A. I consider it permanent * * *."

Testimony of this nature cannot be deemed sufficient to support a finding that plaintiff is totally and permanently disabled for regular employment for hire as required by subdivision a (3) of the Act. Indeed, such testimony must be read in conjunction with the following testimony of the medical expert to understand its true import:

"Q. With the back in such condition, and the man's brain and spinal cord being in the condition you have referred to, this disturbance of his equilibrium, in your opinion with reasonable certainty will this man ever be able to do the work of a railroad

brakeman or conductor, anything of that kind? A. I believe he is unemployable as a railroad trainman.

"Q. By that you mean he can't do the work? A. I believe that he couldn't safely be employed to do the work, and that if employed he couldn't carry out the necessary actions and reactions on his part to do the work.

\* \* \*

"Q. Doctor, when Mr. O'Neill asked you about this man's condition, his present condition, and you said that he couldn't safely be employed in his former work, what did you mean by that? A. I mean that I find he has some loss of his locomotor function, uncertainty of his ability to move from place to place, some loss of strength, and he has a complete disfunction of his back."

■ The particular injury to an employee may be permanent in nature but this alone is insufficient basis for the application of Section 228b, subdivision a (3), of the Act. The Railroad Retirement Act of 1935 (49 Stat. 967) provided that an employee otherwise eligible could qualify for a disability annuity if it merely could be shown that he had been retired by a carrier because of physical or mental disability. Under the 1937 Act this requirement was displaced by the requirements set forth in Section 228b, subdivision a (3) and the essential point of difference is nowhere better exampled than by the following language of the Railroad Retirement Board, which administers the Act, in its Annual Report of 1938 to the President, at pages 31 and 32: "Disability rating.—The 1937 act defined disability more stringently than the 1935 act. Under the 1935 act an employee otherwise eligible could qualify for a disability annuity if it could be shown that he had been retired by a carrier because of physical or mental disability. Under the 1937 act it is necessary to establish that he is 'permanently and totally disabled for regular employment for hire.' This definition of disability differs in some respects from that used by the railroads. In many cases railroads find it necessary to disqualify persons for particular occupations for disabilities which are not disabling for all work. Railroad surgeons frequently examine a man only to determine whether the disability is sufficiently serious to disqualify him for railroad work, without inquiring further if he is able to follow any substantial, gainful occupation. For example, a person who is color-blind, though otherwise in perfect physical condition, ordinarily cannot be a locomotive engineer or fireman. Such an employee would not be eligible for an annuity based on disability because he could not be considered permanently and totally disabled for regular employment for hire."

■ Upon the record before this Court it cannot be found that the nature of plaintiff's injury is such that, notwithstanding its seriousness and probable permanent continuation, he would be prevented thereby from following any substantial, gainful occupation. At most the evidence establishes that this plaintiff will be unable to follow his former occupation, but it does not establish within the requirements of legal evidence that he is disabled for all work. This is substantially the norm provided by Section 228b, subdivision a (3), and the defendants, upon whom the burden of establishing the defense rests, have failed to satisfy the requirements for a finding justifying the application of the foregoing provision.

■ The defendants further claim, however, by way of set-off, that they should in any event be permitted to deduct the amount of their contributions to plaintiff's annuity from the amount awarded to plaintiff by the jury. It is generally established that a wrongdoer causing a plaintiff damages is not entitled to have the damages for which the wrongdoer is liable reduced by proving that the plaintiff has received or will receive compensation from a collateral source. Brabham v. Baltimore & O. R. Co., 4 Cir., 220 F. 35, L.R.A.1915E, 1201; S. H. Kress Co. v. Bullock Shoe Co., 5 Cir., 56 F. 2d 713; Terry v. Jewett, 78 N.Y. 338; Briggs v. New York Cent. & H. R. R. Co., 72 N.Y. 26. The rule is applicable here though at first blush there would appear to be some validity to defendants' suggestion that the source of compensation in this case is not collateral because defendants themselves made contributions for purpose of the annuity. It is enough to state that defendants ignore the salient fact that the contributions, upon the basis sought to be set off, have relation to the age provisions of the Act and there is no nexus between the purpose for which the contributions in this regard were made and the purpose for which damages in this negligence action are awarded.

For the reasons just stated it is decided as a matter of law that defendants have no right to a reduction of plaintiff's damages in

a suit of this nature regardless of whether or not the injuries were of a total and .permanent character, where the claim to reduction is predicated upon the foregoing provisions of the Act.

The verdict of the jury must stand as rendered and judgment thereon may accordingly be entered.