## AGWILINES, Inc., v. EAGLE OIL & SHIPPING CO., Limited.

### No. 142.

Circuit Court of Appeals, Second Circuit.

Jan. 10, 1946.

Writ of Certiorari Denied April 29, 1946.

See 66 S.Ct. 980.

---

870

CLARK, Circuit Judge, dissenting.

———————

William E. Collins and Burlingham, Veeder, Clark & Hupper, all of New York City (Chauncey I. Clark, of New York City, and Edward A. Neiley, of Washington, D. C., of counsel), for appellant.

Edwin S. Murphy and Kirlin, Campbell, Hickox & Keating, all of New York City (Helen C. Cunningham, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The libellant appeals from a decree in the admiralty, because of the insufficiency of the award for the detention of its ship, "Agwidale," resulting from a collision with the claimant's ship, "San Veronico." The parties agreed that the claimant should pay eighty-five per cent of the total damages, and the case was sent to a commissioner, before whom all items of damage were stipulated except that for detention. The Commissioner's report as to this item is not disputed, and was as follows: "As a result of the collision the 'Agwidale' was necessarily out of service for nine days, from June 6, 1943, 5:00 A. M. to June 15, 1943, 5:00 A. M.; from June 6, 1943, at 8:20 A. M. until June 11 at 3:30 P. M. she was undergoing repairs, and from the last mentioned date until June 15 at 5:00 A. M. she was waiting for a convoy. During all this period the 'Agwidale' was under time charter to the United States through the War Shipping Administration. Pursuant to the provisions of this charter the United States was under obligation to, and did, pay libelant half hire during the repair period, full hire during the period while the 'Agwidale' waited for a convoy, and $207.89 for fuel and water. During the repair period libelant paid $240.12 for fuel and water, for which it has not been reimbursed.

"Counsel for the 'San Veronico' do not dispute liability for the pecuniary loss of the owners of the 'Agwidale,' namely, half hire for the first repair period, and $240.12 for fuel and water paid during this period.

"The advocates for the 'Agwidale' claim that the fact that the owners of the 'Agwidale' have been paid part hire during the detention period is res inter alios acta, and that the liability of the 'San Veronico' is not thereby diminished. Consequently, they claim loss of hire for nine days, equal to $10,942.56 and $448.01, the total disbursements for fuel and water." The only question in the case therefore is—again as stated by the commissioner: "What damages is a shipowner entitled to for loss of use of his ship due to collision, when his charter party hire continues to run and is paid by the charterer?"

 It is well settled law that damages for the detention of a commercial vessel are to be measured by the profits which the owner would have realized from her use, had she been free. The Potomac, 105 U.S. 630, 26 L.Ed. 1194, The Conqueror, 166 U.S. 110, 133, 17 S.Ct. 510, 41 L.Ed. 937. We have so decided many times, the last being in Navigazione Libera Triestina v. Newtown Creek Towing Co., 2 Cir., 98 F.2d 694, 699. The dispute here is therefore as to what profits the libellant lost by the detention; and we find it hard to believe that there could be any doubt about the answer, if the inquiry were confined to the owner's personal loss. Having parted

with all use of the vessel to the United States during the detention, the libellant could not have made profits from that use; only so far as the detention prevented it from collecting the consideration—the hire —in exchange for which it had parted with that use, could it be damaged. To this the libellant makes two answers, the first of which is that its loss was the value of the ship's use, whether the libellant personally received any benefit or not, because it does not lie in a tortfeasor's mouth to say that some third person—in this case the charterer—has indemnified his victim for his loss. S. H. Kress Co. v. Bullock Shoe Co., 5 Cir., 56 F.2d 713; Shea v. Rettie, 287 Mass. 454, 192 N.E. 44, 95 A. L.R. 571; Elmer v. Fessenden, 154 Mass. 427, 28 N.E. 299; Campbell v. Sutliff, 193 Wis. 370, 214 N.W. 374, 53 A.L.R. 771; Regan v. New York & N. E. R. Co., 60 Conn. 124, 22 A. 503, 25 Am.St.Rep. 306; Restatement of Torts, § 920 Comment (e). That doctrine we accept, but it has no application to the facts before us; for it presupposes that the tortfeasor has caused a loss, since otherwise it is absurd to speak of indemnity. As we have just said, the libellant suffered no loss from the detention of the ship, except the loss of the half hire during the repairs. By the charterparty it had already parted with all right to her use, and the collision could not result in depriving it of what it did not have. The charterer did indeed suffer a loss, for which, if we could, we should allow it to recover; but this branch of the libellant's argument does not stand upon the charterer's loss. The fact that it chances that the value of the use was the same as the hire, and that the libellant only claims the amount of hire must not disguise the fact that the payment of hire cannot be the measure of the loss of either owner or charterer. This would at once appear, if the value of the use had fallen after the charterparty was made; for it would then be plain that the collision had caused the charterer, not the loss of the hire for which it was bound anyway, but the loss of a lesser amount. And, conversely, if the value of the use had risen, although on the libellant's theory the whole hire would be recoverable, it would not measure the charterer's loss, and it would not measure the owner's, even though we were to assume that the owner suffered any loss.

■ The second ground for recovery is that the libellant, as owner, should be allowed to sue for the charterer's loss on the same theory that a ship recovers as bailee of her cargo for cargo losses, as in effect we held in Pool Shipping Co. v. United States, 2 Cir., 33 F.2d 275, in accord with recognized admiralty practice. To that, however, Robins Dry Dock & Repair Co. v. Flint et al., 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290, is an answer. The charterer there sued to recover his loss from a detention caused by the negligence of a drydocker who had broken the ship's propeller. When the case was before us (2 Cir., 13 F.2d 3), we held that, although the charterer had had no proprietary interest in the ship and no contract with the drydocker, the drydocker could not protect himself by the ordinary doctrine that a tortfeasor is not liable for remote damages, because the whole loss from detention of the ship was to be apprehended from his lack of care, whether the owner bore it all, or shared it with a charterer; and that, the whole loss being therefore a direct consequence of his negligence, he should not be allowed to cut down his liability. As part of our argument we said that the owner could have sued on behalf of the charterer for the charterer's share in their joint loss, in analogy to suits by a ship as bailee of her cargo—the very position now taken by the libellant at bar. The possible objection that the owner was not a party libellant (Hines v. Sangstad S. S. Co., 1 Cir., 266 F. 502, we disregarded because the respondent had failed to assign this procedural defect as error. To all of this the Supreme Court said "no." It thought that the only basis for charging the drydocker with liability was because he had prevented the performance of the charterparty by the promisor—the owner— and that interference by a third person with the performance of a contract was an actionable wrong only if it was intentional. The Court thought it irrelevant that this resulted in exonerating the drydocker from nearly all liability through the fortuity that the profitable use of the ship had been divided between the owner and charterer: the difficulty went deeper; the drydocker had committed no legal wrong against the charterer at all, though he had caused it serious damage. Perhaps it was not necessary after so holding to consider our argument that the owner might be treated as suing on behalf of the charterer; but the court did so and definitely repudiated it, as appears by the passage from the opinion on

page 309, of 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290, which we quote in the margin.[1] In the face of this decision we cannot see how we can do otherwise than affirm the decree at bar; if any change is to be made the Supreme Court must make it. And indeed, even though the matter were open to us, we should be faced with the decision of the Court of Appeal in England, decided upon facts which, so far as we can see, were on all fours with those before us. Chargeurs Reunis etc. v. English & American Shipping Co., 9 Lloyd's List L. R. 464.

Decree affirmed.

**CLARK, Circuit Judge (dissenting).**

I take it as agreed that but for the payment by the United States to the libelant of a portion of the charter hire, pursuant to the charter, libelant would recover complete compensation for the loss of use of its vessel due to claimant's act—computed here at the charter rate, since that was the only evidence of value offered. That being so, we have the rather startling result that claimant receives the bonanza of a substantial reduction in damages through the mere chance that its victim has a favorable contract with another. The case viewed as requiring this result, Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 135, 72 L.Ed. 290, has no such effect; there the action was by the charterers, and the Court quite scrupulously avoided a decision beyond the issue before it or casting doubt upon our premise below (2 Cir., 13 F.2d 3) that the owner could sue. It merely disagreed with our further deduction that hence the charterers also could sue; indeed, it seems to assume that the owner—who had already settled with the tort-feasor—could have sued for his full damages, for it says that the charterers "have no claim either in contract or in tort, and they cannot get a standing by the suggestion that *if some one else had recovered it* he would have been bound to pay over a part by reason of his personal relations with the respondents." 275 U.S. 303 at page 309, 48 S.Ct. 134, 72 L.Ed. 290 (italics supplied). But the point was not of immediate importance, since the owner had already collected for loss of use, and the charterers—excused by their charter from paying charter hire, see The Bjornefjord, 2 Cir., 271 F. 682—were suing only for the loss of their good bargain, vessel hire having become very expensive in the summer of 1917.[2]

Whether or not one may like the policy of the Robins case, there are some very good arguments for it on its own terms. The idea that a defendant may be subjected to many lawsuits, even after he has taken a release from the injured owner, by persons lacking anything approaching what is commonly viewed as property or more than various contract rights with the owner, is novel. Moreover, liability to such harassment is ordinarily unnecessary for just re-

---

[1] "The whole notion of such a recovery is based on the supposed analogy of bailees who if allowed to recover the whole are chargeable over, on what has been thought to be a misunderstanding of the old law that the bailees alone could sue for a conversion and were answerable over for the chattel to their bailor. Whether this view be historically correct or not there is no analogy to the present case when the owner recovers upon a contract for damage and delay."

[2] Hence it is not logical to find a definite repudiation of suit by the owner, for either his own or the charterers' benefit, in the Court's repudiation of "the supposed analogy of bailees" allowed to recover the whole because they were "chargeable over." Here we are not interested in a suit by *bailees;* moreover, the Court said only that there was no basis there for holding the charterers chargeable over, and hence the decision is not even authority against suit by the charterer (as the United States here) for actual hire paid under its charter during the period of loss of use. Perhaps more support is to be found in some language in Chargeurs Reunis, etc. v. English & American Shipping Co., 9 Ll.L.L.Rep. 464, though the absence of real discussion of the issues perhaps explains the relegation of the case to the unofficial reports where it is found. There likewise the claim for loss of use was made on behalf of the charterer; the owners, also parties, were allowed, and had apparently already received, all that they claimed. See the decision below, 9 Ll.L.L.Rep. 90, 91, also id. 464, 466. When, however, recovery was refused the charterer, counsel went on to claim—"for a reason I do not quite follow," as Bankes, L. J., rather revealingly says—that the owners stood in a better position. To this the court's only answer was the formal statement that "it does not lie in the mouth of the owners to say they are in a better position." I suggest that this is too weak a basis to support a major change in the American law of damages.

sults in modern law at least, in view of our recognition of the rights of an assignee or a subrogee. Nevertheless, the problem of excessive suits is still present in the case of the partial assignee or subrogee; and it is met in various ways, such as the required joinder of all persons in interest, Restatement, Contracts, 1932, § 156, or, in some jurisdictions, suit only by the original party. See cases collected in my text on Code Pleading, 1928, 103, 110. Under modern principles of free joinder, there is much to be said for the first alternative of required joinder, with the added proviso that the defect may be waived by a defendant who does not assert it. The objection to any other course is that it puts difficulties in the way of funneling the money to the parties ultimately entitled thereto, all for the mere procedural advantage of a defendant who should be interested only in his own protection, not in the destination of the money. Fox v. McGrath, 2 Cir., 152 F.2d 616. But these principles are not important where there is neither assignment nor subrogation;[3] then it becomes a question how far the proximate consequences of a tort will be traced to others than the main actors. These considerations are adverted to merely to point out that in the Robins case there was an interesting and important problem which, however, is not ours, and that the decision cannot properly be wrested from its facts to justify a new and unusual rule of damages.

For in admiralty, as well as at law, there is no more solidly established principle than that payments or reparations of whatever nature which the injured party receives from a collateral source are, in the words of the courts, res inter alios acta, of no concern to the wrongdoer. Restatement, Torts, 1939, § 920, comment e; Sutherland on Damages, 4th Ed., Berryman, 1916, § 158, p. 487, and cases cited p. 488, n. 42, id. § 1295, p. 5014; Hale, Law of Damages, 1912, §§ 43-45, p. 186. This has been held true of compensation from an insurance company, The Steamboat Potomac v. Cannon, 105 U.S. 630, 26 L.Ed. 1194; The Propeller Monticello v. Mollison, 17 How. 152, 58 U.S. 152, 15 L.Ed. 68; Phoenix Ins. Co. v. The Steamboat Atlas, 93 U.S. 302, 23 L.Ed. 863; Mobile & Montgomery

R. Co. v. Jurey, 111 U.S. 584, 4 S.Ct. 566, 28 L.Ed. 527, of payments under the Railroad Retirement Act, 45 U.S.C.A. § 228a et seq.; McCarthy v. Palmer, D. C. E. D. N. Y., 29 F.Supp. 585, affirmed 2 Cir., 113 F. 2d 721, certiorari denied Palmer v. McCarthy, 311 U.S. 680, 61 S.Ct. 50, 85 L. Ed. 438, or a state compensation act, N. L. R. B. v. Marshall Field & Co., 7 Cir., 129 F.2d 169, 144 A.L.R. 394, affirmed Marshall Field & Co. v. N. L. R. B., 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744; Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 128 A.L.R. 1101, and of hospital and medical expenses received from a state industrial commission, Overland Const. Co. v. Sydnor, 6 Cir., 70 F.2d 338.

Nor is the rule confined to reparations which may be classified as insurance or indemnity where the injured party or some one acting in his behalf has contributed to the fund from which payment is made. Thus an owner may recover damages for injury to his buildings, although the terms of his lease require the tenant to continue payments. S. H. Kress Co. v. Bullock Shoe Co., 5 Cir., 56 F.2d 713. In nearly all jurisdictions, an employee may recover full damages for personal injuries, although he has received wages from his employer during the period of illness, Shea v. Rettie, 287 Mass. 454, 192 N.E. 44, 95 A.L.R. 571; Campbell v. Sutliff, 193 Wis. 370, 214 N. W. 374, 53 A.L.R. 771; Hayes v. Morris & Co., 98 Conn. 603, 119 A. 901—a view which I understand my brethren to accept in citing this line of cases favorably. And an injured party may include as part of his damages medical services, although they have been gratuitously performed or paid for by relatives. Chicago, Duluth & Georgian Bay Transit Co. v. Moore, 6 Cir., 259 F. 490, certiorari denied 251 U.S. 553, 40 S.Ct. 118, 64 L.Ed. 411. See annotation 128 A.L.R. 687.

These decisions are so identical with the facts here that the attempt to distinguish this case as one where the libelant suffered no "loss," I can regard only as question begging—so much so in fact that I confess to surprise that so purely verbal an argument is urged. It is most starkly stated by claimant when it says the cases are "clearly distinguishable" because "in all of

---

[3] So in the Robins case, under the facts set forth, and in the English case, supra note 1, where the court excluded subrogation, since the charter party was neither an insurance policy nor a contract of indemnity—a conclusion which should have removed the last bar to recovery by the owners.

them plaintiff sustained the primary loss and thereafter received reimbursement by way of insurance or gratuity." Here, just as surely, plaintiff sustained the *primary* loss (whatever significance that adjective may be thought to bring to the issue) and was definitely in the red until the loss was made good by the payments from the United States. And here the wrongdoer receives the windfall advantage which those cases deny him. Indeed, the cases which most emphatically announce the rule of "actual loss" apply it at the same time and with entire consistency with the principle here contended for. See especially The Steamboat Potomac v. Cannon and Phoenix Ins. Co. v. The Steamboat Atlas, both cited supra. And see further the line of cases permitting recovery by a shipowner for loss of earnings, notwithstanding the availability of spare boats. The Cayuga, C. C. E. D. N. Y., Fed.Cas.No.2,537, affirmed 14 Wall. 270, 81 U.S. 270, 20 L.Ed. 828; The Favorita, C. C. E. D. N. Y., Fed.CasNo.4,695, affirmed 18 Wall. 598, 85 U.S. 598, 21 L.Ed. 856; The Emma Kate Ross, 3 Cir., 50 F. 845. Indeed, we followed this principle in Pool Shipping Co. v. United States, 2 Cir., 33 F.2d 275, a case of persuasive authority here. For there we rejected the tort-feasor's argument that the libelant hull-owner's damages should be reduced by the amount of the general average contribution he had collected from cargo.

I do not think these persuasive precedents of the law of damages should be repudiated for an unorthodox doctrine which can serve only to penalize the prudent and provident shipowner. I would reverse for the grant of damages for the loss of use, as claimed.