### THE AGWIDALE.

### THE SAN VERONICO.

District Court, S. D. New York.

March 29, 1945.

To the Honorable the Judges of the United States District Court for the Southern District of New York:

The report of Wharton Poor, appointed Commissioner by order dated August 18, 1944, respectfully shows:

The order of August 18, 1944, provides in part: "Ordered, adjudged and decreed that Agwilines, Inc., as owner of steamship Agwidale and on behalf of any others interested in said vessel, her use and operation, recover of and from Eagle Oil & Shipping Company, Ltd., claimant of motorship San Veronico and her stipulators, 85% of the provable damages sustained as a result of the collision set forth in the libel herein together with interest."

On January 29, 1945, there appeared before me counsel for libelant and claimant. Libelant's counsel offered in evidence a stipulation dated December 27, 1944, as to certain facts and rested; counsel for claimant also rested. Oral argument then took place, after which there were delivered to me briefs and reply briefs in behalf of both parties.

Libelant was represented by Chauncey I. Clark, Claude E. Wakefield, William E. Collins and Edward A. Neiley, and claimant by Edwin S. Murphy and Helen C. Cunningham.

The stipulation of December 27, 1944, shows that as a result of the collision referred to in the libel the libelant Agwilines, Inc., sustained physical damage to its vessel, and has made or will make disbursements for repairs, etc., in the total amount of $6,707.78, itemized under nine separate headings. These nine items are not disputed.

Item No. 10, a claim for demurrage and expenditures for fuel and water, is the only remaining item and is in dispute.

The controversy is this:

As a result of the collision the Agwidale was necessarily out of service for nine days, from June 6, 1943, 5 a. m. to June

15, 1943, 5 a. m.; from June 6, 1943, at 8:20 a. m. until June 11 at 3:30 p. m. she was undergoing repairs, and from the last mentioned date until June 15 at 5 a. m. she was waiting for a convoy. During all this period the Agwidale was under time charter to the United States through the War Shipping Administration. Pursuant to the provisions of this charter the United States was under obligation to, and did, pay libelant half hire during the repair period (Charter party clause 4), full hire during the period while the Agwidale waited for a convoy, and $207.89 for fuel and water. During the repair period libelant paid $240.12 for fuel and water, for which it has not been reimbursed. (Charter party clause 4).

Counsel for the San Veronico do not dispute liability for the pecuniary loss of the owners of the Agwidale, namely, half hire for the first repair period, and $240.12 for fuel and water paid during this period.

The advocates for the Agwidale claim that the fact that the owners of the Agwidale have been paid part hire during the detention period is res inter alios acta, and that the liability of the San Veronico is not thereby diminished. Consequently, they claim loss of hire for nine days, equal to $10,942.56 and $448.01, the total disbursements for fuel and water, as damage sustained under item 10.

The case sharply raises a question which has already been before the Courts on occasions, namely, what damages is a shipowner entitled to for loss of use of his ship due to collision when under his charter party hire continues to run and is paid by the charterer?

A related question was decided by the Supreme Court in Robins Dry Dock & Repair Co. v. Flint et al., 275 U.S. 303, 48 S. Ct. 134, 72 L.Ed. 290. In that case Flint, Goering & Co. were time charterers of the Norwegian s/s Bjornefjord. During the currency of the time charter, it became necessary to drydock the ship for minor repairs and the propeller was removed. Due to the negligence of the employees of the drydock company, the propeller was dropped and broken. A new propeller had to be cast and this caused a delay of several weeks.

Flint & Co. were relieved from paying hire during this delay under the off-hire clause in the charter, see The Bjornefjord, 2 Cir., 271 F. 682, but nevertheless sustained a heavy loss because the rate of hire due

under the charter party was much less than the then current rate. To recover this loss Flint & Co. sued the Robins Company and were successful in the District Court and Circuit Court of Appeals. Judge Mack in the Circuit Court of Appeals held that the time charterers had merely a contract right to the use of the ship, but that this was property which the law would protect against impairment by the negligent act of a third party.

The Supreme Court reversed the lower courts. In an opinion by Holmes, J., it was said (275 U.S. 308, 309, 48 S.Ct. 135, 72 L. Ed. 290) : "as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. * * * The law does not spread its protection so far."

The advocates for the Agwidale concede that, in view of the decision in the Robins case, supra, the United States has no direct claim against the San Veronico, but point out that it does not necessarily follow that the hire and disbursements paid by the United States cannot be recovered by the owners of the Agwidale.

Prior to the decision of the Supreme Court in the Robins case, there had been a decision by the District Court in this circuit that a time charterer was entitled to recover his loss in a tort action from the vessel at fault in a collision, The Aquitania, D. C., 270 F. 239, and a time charterer, had also been allowed recovery of loss sustained by negligent damage to the ship's mast by a stevedore, Hines v. Sangstad S. S. Co., 1 Cir., 266 F. 502. In so far as these decisions allow the time charterer to recover for negligent damage to his contract right, they are overruled by the Robins case.

Admitting that the United States has no claim against the San Veronico, the question remains whether the owners of the Agwidale can recover the hire paid them by the United States and the disbursements made by the United States. I know of only three decisions which could be considered in point, and these are adverse to the right of recovery; none of them are binding on this Court. Before coming to those cases, it seems to me necessary to consider the basis on which damages for loss of use are assessed in collision cases.

The measure of damages for detention when the ship is under a long term

time charter is the hire which the ship-owner loses, to which should be added other incidental expenses (fuel, etc.) incurred. The Yaye Maru, 4 Cir., 274 F. 195; The Brand, 3 Cir., 224 F. 391, Ann.Cas.1917B, 996; The Essex Envoy, 18 Asp.M.C.N.S. 54; 34 Ll.L.L.R. 191.

Market rates are in my opinion inapplicable when the loss sustained is definitely fixed by the contract on which the ship is employed. In any event, there is no evidence as to market in the case at bar and it is even likely that there was no time charter market in June, 1943, because all of the great merchant fleets were under requisition.

The decisions show that whenever demurrage is claimed, the Courts scrutinize the proof of the shipowner and allow him only the actual loss sustained. Events peculiar to the particular shipowner, and even of a fortuitous character, may eliminate or reduce a claim for damages due to detention.

In The Bodlewell, L.R. [1907] P.D. 286, the plaintiff's ship had been employed by the shipowner, who was seeking to break into a "ring", in a line. At the time of the collision, cargo was being carried at a cut-rate basis, and the employment of the ship was not remunerative. The shipowner expected admission into the "ring" at a later period and would then earn handsome profits. It was held that, as the ship was being unremuneratively employed at the time of the collision, no demurrage could be allowed.

In The Susquehanna, L.R. [1926] A.C. 655, an oil tanker belonging to the Admiralty was delayed for a month in making repairs made necessary by a collision. The Admiralty, by economy in consumption, managed to get through their work without the injured tanker. It was held that demurrage based on what it would have cost the Admiralty to hire a substitute was not recoverable.

In The York, L.R. [1929] P.D. 178, the s/s Royal City had suffered some collision damage which did not require immediate repair. Some months later, the owners of the Royal City contracted to sell her to Greek buyers, delivery to be made at Antwerp not later than February 25th. The Royal City arrived at Antwerp on January 10th. Her cargo was discharged. She was inspected by her buyers while afloat, her engines and boilers were opened up and she was drydocked, all as required by the contract of sale, the buyers taking delivery on February 13th. The collision repairs were begun on January 16th and completed prior to delivery to the buyer. It was held that no damages for detention were recoverable, as the plaintiff had suffered none; the ship would have been detained in any event for the purpose of complying with the sales contract.

The decisions in our Courts apply the same rule. To recover demurrage the libelant must show that his ship would have been profitably employed during the period of detention. The Loch Trool, D. C., 150 F. 429; The Colombia, D.C., 197 F. 661, affirmed 5 Cir., 199 F. 990. If for commercial reasons or even because of some unusual condition affecting the particular shipowner, i. e., blacklisting, employment would not have been obtained, demurrage is not recoverable. A/S Bonheur v. San Francisco & P. S. S. Co., 9 Cir., 287 F. 679; The Winfield S. Cahill, 2 Cir., 258 F. 318. If a tug owner can handle all of the work available with the remainder of his fleet, he cannot recover demurrage while his injured tug is being repaired. Brooklyn Eastern Dist. Terminal v. United States, 287 U.S. 170, 53 S.Ct. 103, 77 L. Ed. 240. If a ship running in a line with fixed sailing dates is able to make her sailing date, despite her being delayed, no demurrage is recoverable. The Saginaw, D. C., 95 F. 703. There Judge Addison Brown said that the demurrage to be allowed was "indemnity for actual pecuniary loss, and nothing more" (page 704).

See, too, such well-known cases as: The Conqueror, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937; The Morristown, 2 Cir., 238 F. 347; The Glendola, 2 Cir., 47 F.2d 206; Navigazione Libera Triastina Societa Anonima v. Newtown Creek Towing Co., 2 Cir., 98 F.2d 694.

The burden is on the libelant to prove that he has sustained a loss. In the absence of proof of loss there "is not a head of pecuniary damages, for no actual harm was done." Lord Sumner in The Susquehanna, supra, [1926] A.C. 655 at page 663.

In the present instance, the libelant has proved a loss of half hire for a little over five days and expenditure in the amount of $240.12 for fuel and water during the repair period. These, in my opinion, are the only amounts which the libelant has lost as a consequence of the detention. The remain-

der of the hire and the other item of expenditure, for fuel and water, are the loss of time charterer who is not entitled to hold the San Veronico therefor under the decision in the Robins case.

If there should be doubt as to the correctness of the above conclusion, it should be dispelled by the decisions which have dealt with the same, or a similar, situation.

In The Yaye Maru, D.C.Md., 265 F. 850, a steamer of that name was injured in a collision on November 5, 1919, for which the s/s War Lark was alone at fault. The Yaye Maru was under a time charter, containing the usual off-hire clause to the effect that "in the event of loss of time" due to damage to hull or machinery, hire should cease "for the time thereby lost." In the collision action, the owners of the War Lark contended that no demurrage was allowable on the ground that hire continued to run during the repair period of six days, for the reason that during all of this period the Yaye Maru was waiting for a government embargo to be lifted so that she could load a cargo of coal; therefore, there was no loss of time to the charterer.

Judge Rose, then District Judge in the Maryland District, agreed with the War Lark's contention. He found that the Yaye Maru had not been delayed by the collision and consequent repairs. There was, therefore, he considered, no "loss of time," and the charterer was liable for the hire during the repair period. He consequently held that the owners of the Yaye Maru, not having sustained a pecuniary loss on account of the ship's detention, were not entitled to the recovery of demurrage from the War Lark. Judge Rose said (265 F. 851): "On the 25th of the following January the owner of the Yaye Maru allowed her charterer some $20,000 as off-hire. It is admitted that its action in so doing cannot affect the rights of the War Lark. It is consequently unnecessary to inquire or to speculate as to why the charterer found the owner so yielding, for it may not recover from the War Lark, unless the payment was one the charterer could have compelled it to make."

Judge Rose's decision was reversed on appeal, 4 Cir., 274 F. 195, but the reversal was solely on the ground that the Yaye Maru was off-hire during the repair period. The Circuit Court of Appeals found that there was at least a possibility that the charterer might have sent the Yaye Maru on a voyage at the time of the repair period; there was consequently a "loss of time" so that the Yaye Maru was off-hire while repairing. Demurrage was therefore allowed. Had the Circuit Court of Appeals agreed with Judge Rose in his conclusion that the Yaye Maru was not off-hire, that Court would seemingly have held that demurrage was not recoverable and affirmed the decree. The Circuit Court of Appeals said (274 F. at page 196): "The primary question is whether the charterer was entitled to this allowance for off-hire under the break-down clause of the contract. Could he have enforced it as a matter of right?" After concluding that the Yaye Maru was off-hire, the Circuit Court of Appeals ended its opinion (274 F. at page 200): "If the owner of the Yaye Maru was bound to allow the off-hire in dispute, it was an element of the damage caused by the wrongful act of the War Lark, and the latter must respond."

Chargeurs Reunis v. English & Am. Shipping Co., 1921, 9 Ll. L. L. R. 90 (Admiralty Division), affirmed at page 464, by the Court of Appeals, seems directly in point.

In that case, the s/s Ceylan, owned by Chargeurs Reunis and under requisition time charter to the French Government, had been injured in a collision for which defendant's s/s Merida was solely at fault. It appears from the decision that under this charter party the Ceylan's hire and expenses had to be paid for by the French Government during the repair period. It was held that neither the Chargeurs Reunis (owners) nor the French Government (charterers) could recover from the Merida the hire and expenses that had to be paid by the French Government. In the Court of Appeal Bankes, L. J., said (9 Ll. L. L. R. 464 at page 465):

"They (the French Government) had requisitioned the vessel upon the terms of the charter-party. They were the charterers, and under the terms of the charter-party they were under an obligation to pay the owners certain sums which are named in the charter; and under the terms of the charter they remained liable to pay the owners certain of those sums during the time the vessel was under repair, and they (the Government) could make no use of her. They claimed as damages the loss they had sustained owing to the fact that they had to continue to pay for the vessel, although they were unable to use her during the time she was under repair. Objection

was taken to that claim upon the ground that under the charter-party the French Government acquired no more than a contractual right to use the vessel; and if that were their only right, then according to English law they could not claim damages against the wrongdoer who had caused the loss they claimed for, because it has been held and clearly established that in such circumstances no damages are recoverable. The French Government sought to overcome that contention by contending, first of all, that under the terms of this charter-party, having regard to the fact that it was a charter-party entered into under requisition, they were not in the position of ordinary time-charterers, but there was a demise of the vessel to them. Looking at the document itself, I can only agree with the view taken by Mr. Justice Hill when he said:

"'I arrive at the conclusion that the ship always was and remained in the possession of her owners under the terms of the charter-party, which the owners were obliged to agree to, because the French Government had requisitioned the ship. That being so, it seems to me that as the French Government were neither the owners of the ship nor in possession of her, all that can be said for the French Government is that they had the use of the ship under a contract, and, therefore, damages to the French Government arise only because under the terms of the contract they continued liable to make certain payments to the owners while getting no benefit from the ship during the period of detention. In those circumstances the French Government had no cause of action arising out of the negligence of the Merida. That means this: that if there is to be any recovery at all it can only be a recovery by the owners.' "

After concluding that the charter was compulsory was immaterial, Bankes, L. J., continued at page 466 of 9 Ll. L. L. R. 464:

"A second point is taken by Mr. Leck. He says that these wrongdoers ought not to be allowed to get off so lightly, and that looking at the matter as between the owners of the vessel and the wrongdoers merely, the wrongdoers ought to pay to the full for the damage sustained by their wrongdoing; and he says, for a reason I do not quite follow, from this point of view the owners stand in a better position than the French Government, and although the French Government cannot recover any damages, and although,

so far as the wrongdoers are concerned, they, the owners have received from the wrongdoers the whole loss they have sustained, nevertheless, they, the owners, are entitled to say to the wrongdoers 'you must pay something more.' I confess I cannot follow the argument. It seems to me that if the damages are not recoverable by the French Government because the French Government have no right which alone would entitle them to recover them, it does not lie in the mouth of the owners to say they are in a better position.

"Mr. Stranger, for the appellants, has further argued that the charter-party is an insurance policy or contract of indemnity, and that if it is either the one or the other the doctrine of subrogation has to be called in aid, and his clients are in a better position if that is done. The short answer is: The charter-party is neither an insurance policy nor a contract of indemnity. It is a charter-party pure and simple, and although payment of hire is expressed in language not familiar in English charter-parties, it remains payment of hire for the use of the vessel, although the French speak of the payment under the heading of indemnity.

"Therefore, in my opinion, the appeal fails and must be dismissed with costs.

"Lord Justice Scrutton and Lord Justice Atkin concurred."

The Essex Envoy, 1929, 18 Asp.M.C.N.S. 54, 34 Ll. L. L. R. 191, is of the same type as the Yaye Maru, supra. The s/s City of Lyons was detained as a consequence of a collision for which the Essex Envoy was at fault. The City of Lyons was under time charter at the time of the detention. It was argued on behalf of the Essex Envoy that demurrage was not recoverable on the ground that the City of Lyons did not go off-hire. Bateson, J., held that there was loss of time, even if not loss of use, that the City of Lyons consequently went off-hire, and that demurrage was recoverable.

It seems never to have occurred either to counsel or to Court that the hire should be recoverable whether or not the ship went off-hire, as is now contended on behalf of libelant.

While The Essex Envoy, supra, is not directly in point, it is at least persuasive that libelant's theory in the case at bar is rather ingenious and novel than based on commonly accepted legal principles.

All of the collision cases which resemble the case at bar support the theory of the claimant and are adverse to libelant. All of these decisions were rendered by eminent judges. Libelant has not been able to refer to any collision case to the contrary.

Libelant has cited three State Court cases in which the suits were to recover for personal injury; two of these were in the Massachusetts courts and one in Wisconsin. In the most recent, Shea v. Rettie, 287 Mass. 454, 192 N.E. 44, 95 A.L.R. 571, suit was brought by policemen for personal injuries. By the rules of the Police Department, injured policemen were entitled to half pay in case of disability. It was held that these payments by the Police Department did not reduce the damages as they were to be regarded as payments under policies of accident insurance. The other cases cited by libelant involved either insurance payments or gratuities.

On the other hand, counsel for the San Veronico cite Drinkwater v. Dinsmore, 80 N.Y. 390, 36 Am.Rep. 624, where it was stated that an employee could not recover for loss of wages while recovering from an injury due to defendant's fault if his employer was legally bound to continue payment of wages.

In my opinion, a contract of personal service differs in many respects from a contract for the hire of a ship, and I have based my decision on the cases involving ships and have not placed reliance on the conflicting decisions in the State Court cases cited.

If in the case at bar the charter party had provided that the Agwidale was off-hire during the detention, and libelant had held a policy of insurance insuring against loss of time, the San Veronico would have been liable for the full hire and the underwriters would have been subrogated to the recovery. That rule is inapplicable here, because libelant receives hire under a charter party and is not indemnified by underwriters. See judgment of Bankes, L. J., in the Chargeurs Reunis case, supra. This charter party cannot be turned, at the option of the libelant and the United States, into something which it is not. Nor do so-called "equitable" considerations increase the damages which libelant recovers. The law in this class of cases is correctly ruled by the Supreme Court in the Robins case and by the English Court of Appeal in the Chargeurs Reunis case, and no greater measure of damages could be awarded libelant on some theory that a larger award would be more equitable.

Libelant also cites the salvage cases of The Kanawha, 2 Cir., 254 F. 762, and Castner v. United States, 2 Cir., 5 F.2d 214, where the right of a time charterer to share in a salvage award was recognized. It has always been the policy of Admiralty courts to encourage the rendition of salvage services, and, if, in salvage cases, the rights of the time charterer were disregarded, vessels under time charter would be eliminated as salvors. Salvage claims are based on contract, and have nothing to do with tort. I do not believe that these salvage cases are in anywise of assistance in fixing the measure of damages in a collision case.

Libelant also argues that there is an analogy in the cases where, in collision suits, the cargo's share of general average has been collected from the ship at fault.

It is now the law, both in this country and in the English Courts, that if the carrying ship collects general average from her cargo, the owners of that cargo have a direct claim to recover the amount so collected in a suit against the non-carrying ship or her owners. The Cheldale, 61 T.L. R. 188 (December 1944); A/S Cuzco v. The Sucarseco, 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942, which later case is cited by the libelant. In the case last cited, the Supreme Court said (294 U.S. p. 404, 55 S.Ct. 471, 79 L.Ed. 942), that the right of the cargo to recover "arises directly from the tort." Such a right to recover has long been recognized in the United States Courts. Ralli v. Societa, etc., D.C., 222 F. 994.

In Pool Shipping Co. v. United States, 2 Cir., 33 F.2d 275, also cited on behalf of libelant, the shipowner brought suit under private act of Congress to recover for damages sustained in a collision with a Coast Guard cutter. The suit was brought by the shipowner in its own behalf and as bailee of the cargo. It seems very clear that, if the cargo had not paid its contribution in general average, then the items of which that contribution consisted would be recoverable by the shipowner in its own right. On the other hand, if cargo had paid, then the shipowner would be entitled to recover cargo's general average contribution as bailee of the cargo.

There are very many important differences between the contractual obligation to pay hire under a charter and contribu-

tion in general average. The Supreme Court pointed out the distinction in A/S Cuzco v. The Sucarseco, supra, 294 U.S. at page 404, 55 S.Ct. 471, 79 L.Ed. 942. If the shipowner sues as bailee of the cargo, he may no doubt, by long-established precedent, recover physical damage to the cargo and average contribution paid by the cargo which the cargo could recover in a direct suit.

The time charterer cannot, however, sustain a collision suit to recover hire paid during the repair period and the shipowner cannot sue as "bailee" of the charterer.

I therefore conclude that, as regards item 10 of the damages, as stipulated, libelant is entitled to recover no more than 85% of the hire for the first period, amounting to $3,216.91, and 85% of $240.12 for fuel and water, for which amount libelant has not been reimbursed by the charterer or otherwise.

I adopt as my findings of fact the contents of the stipulation between the parties through their proctors, dated New York, December 27, 1944, marked Exhibit 1, constituting all of the evidence introduced at the hearing, and my conclusion of law is that libelant is entitled to recover 85% of the total of items 1 to 9 and also 85% of $3,457.03 under item 10, all with interest as stipulated, except for interest on item 10 which should apparently run from July 1, 1943, see charter party, clause 3.

Subject to the approval of the Court, I fix my fee as Commissioner at $500. Proctors for libelant and claimant inform me that they consider this figure satisfactory. I certify that my fee as Commissioner has not been paid upon the filing of this report.

All of which is respectfully submitted.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark, of New York City, Claude E. Wakefield, of Washington, D. C., William E. Collins, of New York City, and Edward A. Neiley, of Washington, D. C., of counsel), for libelant.

Kirlin, Campbell, Hickox & Keating, of New York City (Edwin S. Murphy and Helen C. Cunningham, both of New York City, of counsel), for claimant of the M. V. San Veronico.

CAFFEY, District Judge.

The libelant excepts to the commissioner's report. The claimant moves to confirm it.

I. In 1943 the Agwidale, owned by the libelant, collided with the San Veronico. The parties agreed that the San Veronico would be liable for 85% of the provable damages of the Agwidale suffered as a result of the collision. The stipulation was embodied in the order appointing the commissioner to determine the damages. The commissioner heard a stipulation as to the facts, heard argument and assessed damages. I adopt his opinion.

II. The libelant has excepted to only one item in the report. That deals with the damages from the detention of the ship. In determining the damages from detention the commissioner took into consideration the charter party under which the United States, not a party to the action, was time charterer of the ship. He found that the charter party provided for payment of half hire during the repair period and of full hire while the vessel was waiting for a convoy and that these sums were paid. Accordingly, he fixed as damages for detention only the half hire during the repair period which had not been paid by the charterer.

The libelant contends that the commissioner should not have considered the charter hire paid by the United States and that he should not have ruled that the measure of damages for detention when a vessel is under a long time charter is the hire which the vessel owner loses. Instead, the libelant contends that the commissioner should have ruled that the measure of damages is the value of the use of the ship to the owner, the charter rate of hire being prima facie evidence of such value to be taken as the yardstick in the absence of any other evidence.

All of the exceptions raise only one question. That is this: Was the commissioner correct in considering the amount of hire actually paid by the charterer during the period of detention in determining the damages suffered by the libelant?

III. The case of Chargeurs Reunis Compagnie Francaise De Navigation A Vapeur ("Ceylan") v. English & American Shipping Co., 9 Ll. L. L. R. 90, affirmed 464, is squarely in point. In that case the French Government had time-chartered a ship owned by the Chargeurs Reunis under a wartime requisition. The ship collided with one owned by the English & American Shipping Company, which was found liable. The charter party provided for payments of hire during the period of detention for

repairs and the payments were made. On appeal it was said: "The question [in the lower court] was whether the French Government could in their own name, or in the name of the shipowners, maintain a claim for damages in respect of the period of detention". Chargeurs Reunis case, supra, 464. The Court of Appeals squarely held that the French Government could not maintain a suit for such damages nor could the shipowners collect the amounts of hire paid by the French Government. In support of that view the statement of Lord Justice Bankes on appeal was this (p. 466): "It seems to me that if the damages are not recoverable by the French Government because the French Government have no right which alone would entitle them to recover them, it does not lie in the mouth of the owners to say they are in a better position."

This case clearly disposes of the contentions of the libelant.

 IV. The British case is in line with the holding by the Supreme Court of the United States that the rule for damages in admiralty causes is the actual pecuniary loss. The Conqueror, 166 U.S. 110, 126–127, 134, 17 S.Ct. 510, 41 L.Ed. 937. The same proposition is sustained by the Circuit Court of Appeals for this Circuit. Navigazione Libera T. S. A. v. Newtown Creek T. Co., 2 Cir., 98 F.2d 694, 698–699. It is also supported by numerous other Federal decisions, as well as by a leading case in the Court of Appeals of New York. Drinkwater v. Dinsmore, 80 N.Y. 390, 392, 393, 36 Am.Rep. 624.

 V. The libelant argues that Pool Shipping Co. v. United States, 2 Cir., 33 F.2d 275, controls the decision in the case at bar. In the Pool case the court refused to consider general average contributions to the shipowner in mitigation of the damages he might collect from the party injuring his ship. It held that the contributions were like insurance and that the payment of a contribution subrogated to the contributor the right to sue to that extent.

But the payment of charter hire during a period of repair is not a payment of insurance. The amount to be received is fixed by agreement between the parties beforehand and has no relation to the actual damages or to their cause. Furthermore, the charterer has no cause of action against the party damaging the ship. There is no subrogation. Robins Dry Dock & Repair Co. v. Flint, 275 U. S. 303, 309, 48 S.Ct. 134, 72 L.Ed. 290; Chargeurs Reunis Compagnie Francaise De Navigation A Vapeur ("Ceylan") v. English & American Shipping Co., supra, 9 Ll. L. L. R. 465, 466.

VI. The libelant argues also that the doctrine in Massachusetts, that the negligent party in a personal injury suit cannot use payments made to the injured person by other persons to diminish the amount of his liability, is applicable. Shea v. Rettie, 287 Mass. 454, 192 N.E. 44, 45, 46, 95 A.L.R. 571; Elmer v. Fessenden, 154 Mass. 427, 28 N.E. 299. The principle of those cases is fully met by the contrary New York holding. Drinkwater v. Dinsmore, 80 N.Y. 390, 392, 36 Am.Rep. 624. But the cases mentioned are not really applicable to a technical admiralty situation.

VII. Since the first exception of the libelant raises the question of the day from which the damages ran, I approve the finding of the commissioner that the date is that of the next payment of the charter hire under the charter party rather than the date of the collision.

The amount of the commissioner's compensation agreed on by counsel is approved.

Exceptions overruled. Report confirmed.

Settle order on notice.