**MUTH et ux. v. FLEMING et al.**

No. 4881.

District Court, W. D. Missouri, W. D.

March 19, 1948.

Terrell & Slaughter, of Kansas City, Mo., for plaintiffs.

Hogsett, Trippe, Deeping & Houts, of Kansas City, Mo., for defendants.

REEVES, District Judge.

The defendants propounded a total of eight interrogatories to the plaintiffs, three of which have been answered. The plaintiffs refused to answer the last five, although the answers to the first three have the effect to supply an answer, in part at least, to interrogatory 5. For instance, in that interrogatory the defendants sought information as to who was driving the truck at the time of the accident. By answer to interrogatory 2, the plaintiffs said: "The names of all of the occupants of said truck at the time of said collision were Wayne Linninger, * * * who was riding in the driver's seat, * * *."

According to the complaint, as well as the answer and reply, the truck was in motion at the time the accident occurred and the inference is irresistible that if Wayne Linninger was occupying the driver's seat he was then unquestionably driving the truck.

The other information sought in the several interrogatories to which plaintiffs object was in substance what the occupants of the truck were doing at the time of the collision, "the names and addresses of all persons having knowledge as to who was driving and attach to your answer copies of any statement or statements of any such persons and any documentary evidence in respect to such matter, which are in possession or control of yourselves or your attorneys."

Information was then sought as to "the speed of said truck at all points within 200 feet of the point of collision as said truck approached said point of collision and whether said truck was stopped at any time within 200 feet of the point of said collision as it approached said point."

The 7th interrogatory was as follows: "State the names and addresses of all persons having knowledge of the facts in respect to the matters referred to in interrogatory 6 and attach to your answer copies of all statements of any such persons in respect to said facts which are in the possession or control of yourselves or your attorneys."

Interrogatory 8 was substantially the same as interrogatory 7. At least this is true so far as necessary for a decision in the case.

The reasons for the objections to the last five interrogatories as assigned by the plaintiffs are that they "call for hearsay and irrelevant and immaterial testimony, in which plaintiffs have filed objections, and since plaintiffs were not present and were not eyewitnesses, they are incapable

of answering said interrogatories of their own personal knowledge."

The formal objections filed included the above, and then the following: "5. That to require plaintiffs to answer said interrogatories would be in violation of their constitutional privilege against unreasonable searches and seizures."

1. It is doubtful if the reason assigned by the plaintiffs would be regarded as sufficient to sustain their objections. However, the importance of the question is such that a careful examination should be made into the authorities to determine whether public policy would justify the court in sustaining the objections.

It would seem that the plaintiffs were warranted in declining to answer the interrogatories with respect to matters concerning which they had only hearsay information. Canuso et al. v. City of Niagara Falls, D. C., 4 F.R.D. 362. According to the pleadings they were not present and would have no way of knowing how the occupants of the truck approached the railroad track and crossing except upon information supplied them. They should furnish the names of their witnesses.

Able counsel for the defendants apparently recognize this and therefore have called for such statements as bystanders and others may have given the plaintiffs touching the facts and circumstances surrounding the tragic collision with one of the defendants' passenger trains. This naturally raises the question as to the right of the defendants to utilize the labors and industry of plaintiffs and their counsel in the preparation of their defense or defenses.

2. The district judges have not been in agreement with respect to the right of adversary counsel to compel opposing counsel to supply data which by their diligence they had collated. Some of the judges say that under the New Rules it is not only permissible but desirable that counsel on each side be required to furnish the results of inquiries for the use of his adversary.

In the United States v. 300 Cans, etc., of Black Raspberries et al., D. C., 7 F.R.D. 36, 37, Judge Jones of the Northern District of Ohio, said that: "The rules of Civil Procedure are very liberal in allowing the inspection of documents which are not privileged."

In that case the trial judge permitted the claimant in a forfeiture proceeding to inspect the records with reference to tests and analyses made of the alleged offending product. This ruling was justified by the statement that, "These are civil proceedings in rem."

In a rehearing the court adhered to its ruling, "in view of the trend of the Rules of Civil Procedure * * * and the liberal construction to be given the forfeiture statute, as well as rules of Civil Procedure such as Rules 26, 33 and 34, recently interpreted by the Supreme Court * * * 'the dark veil of secrecy over pertinent facts' ought not longer to stand * * *."

In Porter v. Central Chevrolet, Inc., D. C., 7 F.R.D. 86, 88, Judge Freed of the Northern District of Ohio said in respect of a similar motion: "There can be little doubt that Rule 33 may be employed to force admissions from parties and to narrow the issues upon trial of the cause. Nor is there any doubt that the rule may be employed to seek out information which might be productive of evidence which may be used against the respondent party upon trial. "But that is a far cry from permitting parties to use the instrument of a rule to require another to collate, analyze, audit and state the effect of the contents of documents that the statute requires to be kept in pursuance of the execution of some public policy."

In Midland Steel Products Co. v. Clark Equipment Co., D.C., 7 F.R.D. 132, 133, Judge Raymond of the W. D. of Michigan said: "The court is convinced that the weight of authority is to the effect that Rule 34 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, was not intended to permit a party to pry into the details of the other party's preparation for trial."

It should be here stated that the interrogatories in this case were filed pursuant to the provisions of Rule 33, Rules of Civil Procedure.

In the case of McCarthy v. Palmer, D. C., 29 F.Supp. 585, 586, the late Judge Moscowitz of the E. D. of New York had before him a similar question and made this emphatic pronouncement: "While the Rules of Civil Procedure were designed to permit liberal examination and discovery, they were not intended to be made the vehicle through which one litigant could make use of his opponent's preparation of his case. To use them in such a manner would penalize the diligent and place a premium on laziness."

This opinion was followed by Judge Caffey of the District Court, S. D. of New York, in Mulligan v. Eastern S. S. Lines, D. C., 6 F.R.D. 601, loc. cit. 604: "But production of such statements obtained by the defendant or its attorney by independent investigations in preparation for trial cannot be compelled, either under Rule 34 or by subpoena, for it would be unreasonable to permit one party to obtain by discovery the results of the preparation for trial of the other party."

The writer sat in the case of Terminal R. Ass'n of St. Louis v. Moore, 8 Cir., 145 F.2d 128, 129. In that case Judge Moore of the E. D. of Missouri had ordered the defendant in a personal injury case to permit the plaintiff to copy a statement made by the plaintiff to a representative of the defendant. Thereupon the defendant sought an order of prohibition against Judge Moore. The writ was denied and the petition dismissed. The decision of the court was based upon the rule that prohibition will not lie against a lower court, if " 'the jurisdiction of the lower court is doubtful.' "

In the case of Hoffman v. Palmer, 2 Cir., 129 F.2d 976, 997, discussed at too great length, the identical question here was there presented. Curiously, while upholding a liberal rule and condemning the one invoked at the trial, the court found no error warranting a reversal of the case. In substance, the court said that keeping the opponent in the dark "is as anachronistic as the buttons on the sleeve of a man's coat; * * * as it cannot be reconciled with the liberality as to depositions and discovery contained in the new Rules."

Putting the question upon the basis of "public interest," the court ruled that an adversary lawyer was entitled to scrutinize the data collated by his diligent adversary.

However, the problem here presented was resolved clearly and lucidly by the Circuit Court of Appeals, 3rd Circuit, in the case of Hickman v. Taylor, 153 F.2d 212, 215. Because of the importance of the question six circuit judges sat in the case. In the district court all of the judges of the district had heard the case. The interrogatory there was almost identical with the interrogatory here. It was: " 'State whether any statements of the members of the crews of the Tugs "J. M. Taylor" and "Philadelphia" or of any other vessel were taken in connection with the towing of the car float and the sinking of the Tug "John M. Taylor." Attach hereto exact copies of all such statements if in writing, and if oral, set forth in detail the exact provisions of any such oral statements or reports.' "

As a preliminary to its discussion, the court said, 153 F.2d loc. cit. 217: "We must start any discussion of the use of discovery in a particular case from the premise that the Rules are intended to go far in making information known by one party available to the other."

Again, the court said, 153 F.2d loc. cit. 218: "It is true that the defendants, through their lawyer, were diligent in going out and getting these statements before the plaintiff did. We have already indicated that this fact does not prevent the other side from sharing the fruits of that diligence."

And, again, 153 F.2d loc. cit. 219: "The thing which gives us great concern in this case is the impact of the rules for discovery when they affect the lawyer-client relationship."

And, again, 153 F.2d loc. cit. 222: "We are clear in our own minds, however, that

540

'privilege' as used in the Rules comprehends the material asked for in the interrogatory which is the foundation of this proceeding, namely, memoranda of talks with witnesses, signed statements made by witnesses, the lawyer's recollection of talks with witnesses."

Again the court said, 153 F.2d loc. cit. 223: "One is tempted to say that the lawyer's files are impregnable against any inquiry from outside. But that depends upon what the lawyer puts in them."

At last the court reached the conclusion that it was not so much a privilege that would protect the lawyer against the invasion of his files by his adversary but that public policy forbade such an invasion. The court said, 153 F.2d loc. cit. 223: "The reason for this frank extension of privilege beyond testimonial exclusion rests on the same foundation that the rule of evidence does. It is the same foundation upon which we base the immunity of the judge for his official acts in that capacity. It is found again in the non-liability of judge, counsel and witnesses for defamation for what they say in the trial of a lawsuit. In none of these instances is the immunity based on the convenience of the individual judge, lawyer or client. It is rather, a rule of public policy, and the policy is to aid people who have lawsuits and prospective lawsuits. Those members of the public who have matters to be settled through lawyers and through litigation should be free to make full disclosure to their advisers and to have those advisers and other persons concerned in the litigation free to put their whole-souled efforts into the business while it is carried on. The soundness of this policy is not capable of laboratory demonstration. Enunciated and applied as it necessarily is by members of the guild which derives incidental benefit from its application, it is open to the gibes of the cynical. We believe it is sound policy; we know that it is irrefutably established in the law. That the principle finds application in the facts presented to us on this appeal we are thoroughly convinced."

It should be stated that in the trial of the case an order had been made by the trial judges upon the defendants and their lawyers to produce memoranda concerning witnesses and statements signed by them. Upon refusal the attorney for the defendants and the defendants were adjudged guilty of criminal contempt for their refusal to answer an interrogatory propounded by plaintiff's counsel. The judgment of the trial court was reversed. The court of appeals was affirmed on certiorari, 329 U.S. 495, 67 S.Ct. 385.

The principle is applicable in this case for the reason that a judge should never make an order that he could not enforce if those upon whom made should be recalcitrant. In view of the above, the objections to interrogatories should be sustained, and it will be so ordered.